Easterly, Associate Judge, dissenting:
In 1992, Brian Williams was sentenced to an aggregate term of at least six decades in prison for a double murder and related crimes he committed at age 17. Although he was resentenced in 1995, his minimum term of incarceration is still 62 years. Pursuant to his 1995 sentence, Mr. Williams remains in prison today and will not become eligible to be released from prison until he is 79 years old-at or very near the end of his life. Mr. Williams is serving a sentence that violates his rights under the Eighth Amendment. He is entitled to habeas relief.
In a trio of decisions- Graham v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) -the Supreme Court interpreted *856 the Eighth Amendment to generally bar sentences that condemn juvenile offenders to die in prison; only an exceptionally rare subset who are both convicted of homicide and proven irreparably corrupt may be so sentenced. In Montgomery , the Court clarified that this Eighth Amendment right not to be sentenced to die in prison is a substantive right; that it renders unconstitutionally imposed sentences void and unenforceable; and that it must be retroactively enforced in state court habeas proceedings. The Majority Opinion alternately assumes and agrees that whether a juvenile offender's sentence to die in prison is mandatory or discretionary, eponymous or de facto, the juvenile offender's Eighth Amendment rights are implicated. I would so hold. Moreover, because life expectancy statistics endorsed by both Mr. Williams and the government project that Mr. Williams will die in his mid to late 70s, I would hold that Mr. Williams' 62-year sentence is unconstitutional and void and grant him the habeas relief to which he is entitled under D.C. Code § 23-110 : a new, constitutionally-compliant sentence.
Yet the Majority Opinion rejects Mr. Williams' entitlement to a new, lawful sentence and affirms the trial court's denial of his § 23-110 motion. My colleagues in the Majority conclude that, even if Mr. Williams' sentence was unconstitutional at the time it was imposed, his request for habeas relief in the form of resentencing has been "moot[ed]" by the enactment of D.C. Code § 24-403.03, a provision of the Incarceration Reduction Amendment Act of 2016 (IRAA). They reason that D.C. Code § 24-403.03 -which authorizes a court to review a juvenile offender's sentence no earlier than twenty years after its imposition, to consider a nonexclusive list of factors, and then to determine solely in its discretion whether to reduce the sentence-"effectively convert[ed]" Mr. Williams' unconstitutional sentence into a constitutional one by giving Mr. Williams all he is entitled: an opportunity for release. For multiple reasons, I cannot agree.
First, it is wrong to say that the violation of a substantive right is cured solely with a procedural remedy. Mr. Williams' right under the Eighth Amendment not to be sentenced to die in prison is not fulfilled by giving him access to sentence review under D.C. Code § 24-403.03. It is fulfilled by giving him a constitutional sentence-one that gives him "hope for some years of life outside prison walls." Montgomery , 136 S.Ct. at 737.
Second, it is wrong to say Mr. Williams' unconstitutional sentence has been "effectively" fixed by D.C. Code § 24-403.03 and only remains in place "as a purely formal matter." It is no mere formality that the only basis for Mr. Williams' current imprisonment is the 1995 sentencing order that requires him to spend the rest of his life in prison. This sentencing order is entirely unchanged by the existence of a statutory procedure that only allows a juvenile offender at a future point in time to request sentence review-as opposed to authorizing him, after service of a minimum sentence term, to request release. Indeed, under the Majority Opinion's logic, the existence of any future sentence review procedure would relegitimize the practice, condemned in Graham and Miller , of sentencing juvenile offenders to die in prison without ensuring at the outset that they meet the strict constitutional criteria for imposition of such sentences.
Third, it is wrong to say that § 24-403.03's twenty-years-in-the-future, discretionary sentence review procedure protects the substance of Mr. Williams' Eighth Amendment rights, even belatedly. This statute, which was never intended as *857 a Montgomery fix, does not require a court to discern if a juvenile offender is one of those rare few incorrigibles who may be lawfully sentenced to die in prison, much less require it to resentence a corrigible juvenile offender to something less than life imprisonment. Thus, as a statutory matter, a corrigible juvenile offender unconstitutionally sentenced to die in prison could seek review under § 24-403.03, be denied discretionary relief, and remain subject to an unconstitutional sentence.
Unquestionably, the Supreme Court in Montgomery gave states flexibility in curing the violation of juvenile offenders' substantive rights under the Eighth Amendment. States do not have to individually "relitigate" now-void sentences to life imprisonment; they may instead categorically replace juvenile offenders' unconstitutional sentences to die in prison with parolable or lesser term-of-years sentences. But the Council of the District of Columbia has not done this, and the flexibility the Supreme Court gave the states does not authorize the District's courts to hold unconstitutional sentences in place and rely on a years-in-the-future, discretionary sentence review mechanism like D.C. Code § 24-403.03 as a constitutional cure-all. Our court will stand alone in the nation in holding that it does.
By withholding from Mr. Williams the relief that he is due-a new, constitutionally-compliant sentence-the Majority Opinion flouts the Supreme Court's directives, renders our habeas review inadequate, and negatively distinguishes us from other jurisdictions. The denial of Mr. Williams' § 23-110 motion should be reversed, not affirmed.
I. Because Mr. Williams' Substantive Rights Under the Eighth Amendment Were Violated, He Is Entitled to Habeas Relief.
A. Juvenile Offenders Have a Substantive Eighth Amendment Right Not to be Sentenced To Die in Prison.
In a trilogy of cases, Graham , Miller , and Montgomery , the Supreme Court held that the Eighth Amendment generally prohibits sentencing juveniles to die in prison. For juveniles who commit nonhomicide offenses, life without parole sentences are barred entirely, per Graham . Ante at 843. For the vast majority of juveniles who commit homicide offenses, life without parole sentences are likewise barred, per Miller and Montgomery ; such sentences are authorized only in the exceptionally rare case where the government has proved that the juvenile is irreparably corrupt. Id. at 843-44. These limits on juvenile sentencing are founded in a recognition that juveniles are developmentally distinct and thus "constitutionally different from adults." Montgomery , 136 S.Ct. at 733 (quoting Miller , 567 U.S. at 471, 132 S.Ct. 2455 ). Because juveniles are both less culpable for their behavior and more receptive to rehabilitation, their criminal conduct is in all likelihood the product of "unfortunate yet transient immaturity." Montgomery , 136 S.Ct. at 734 (quoting Miller , 567 U.S. at 479, 132 S.Ct. 2455 ); see also ante at 844. Accordingly, there is almost never a legitimate penological justification to sentence juvenile offenders to die in prison. They must receive sentences that give them "hope for some years of life outside prison walls."[1] Montgomery , 136 S.Ct. at 737.
*858 The Supreme Court's opinion in Montgomery is the culmination of its Eighth Amendment jurisprudence to date regarding the sentencing of juvenile offenders, and understanding its holding-that the Eighth Amendment substantively proscribes all sentences that condemn juvenile offenders to die in prison (excepting those of homicide offenders proved before sentencing to be incorrigible)-is critical to the correct analysis of Mr. Williams' appeal.[2] Like Mr. Williams, Mr. Montgomery was taken into custody at age 17 for a homicide offense and was sentenced to die in prison. After his conviction was final, he sought to challenge his sentence on Eighth Amendment grounds in state habeas proceedings. Whether he could prevail on this claim in post-conviction proceedings turned on whether the Supreme Court's decision in Miller constituted "a new substantive rule of constitutional law"-i.e., a "rule[ ] prohibiting a certain category of punishment for a class of defendants because of their status or offense"-that retroactively applied to his sentence. 136 S.Ct. at 728-29.
To answer this question, the Court in Montgomery first confirmed that the retroactivity rules set forth in Teague v. Lane , 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (requiring retroactive application of all substantive constitutional rules, but not all procedural constitutional rules), applied in state collateral review proceedings. 136 S.Ct. at 729-32. The Court explained that these retroactivity rules were themselves constitutionally compelled under the Supremacy Clause because "[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void." Id. at 731. A state court engaged in collateral review consequently
has no authority to leave in place a conviction or sentence that violates a substantive rule.... A penalty imposed *859 pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids.
Id. In short, the Court determined that "[i]n adjudicating claims under its collateral review procedures[,] a State may not deny a controlling right asserted under the Constitution ...." Id. at 732.
The Court then confirmed that its Eighth Amendment bar on sentencing juvenile offenders to die in prison is a substantive rule.[3] 136 S.Ct. at 734. The Court explained that although Miller "did not bar a punishment for all juvenile offenders, as the Court did in Roper or Graham [,]" it "did bar life without parole ... for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." Id. at 734. The recognition in Miller that there might be some subset of juveniles for whom life without parole "could be a proportionate sentence" was immaterial. Id. Rather,
[l]ike other substantive rules, Miller is retroactive because it necessarily carr[ies] a significant risk that a defendant-here, the vast majority of juvenile offenders-faces a punishment that the law cannot impose upon him.
Id. (internal quotation marks omitted); see also Id. ("Before Miller , every juvenile convicted of a homicide offense could be sentenced to life without parole. After Miller , it will be the rare juvenile offender who can receive that same sentence.").[4]
Having confirmed that Mr. Montgomery's sentence as a juvenile offender to die in prison was unconstitutional under Miller and void under Teague , the Court reversed the Louisiana Supreme Court's affirmance of Mr. Montgomery's sentence, id. at 737, and on remand, that court directed that Mr. Montgomery be resentenced in compliance with Miller , see State v. Montgomery , 194 So.3d 606, 606-07 (La. 2016). Mr. Williams suffered the same Eighth Amendment violation as Mr. Montgomery and he is entitled to the same relief.
B. Mr. Williams' Substantive Sentencing Rights Under the Eighth Amendment Were Violated.
Just like Mr. Montgomery's sentence, Mr. Williams' sentence violates the Eighth *860 Amendment bar on sentencing juvenile offenders to die in prison. The only distinction between the two cases is that Mr. Williams received a life sentence by virtue of an aggregation of sentences the trial court imposed in its discretion. As the Majority Opinion acknowledges, the trial court never took any evidence or made any finding that Mr. Williams was irreparably corrupt so as to authorize the imposition of such a sentence consistent with the Eighth Amendment.[5]
In line with the government's concession and the decisions of numerous other state courts, the Majority Opinion agrees that Miller (and Graham ) "apply not only to sentences that literally impose imprisonment for life without the possibility of parole, but also to lengthy term-of-years sentences (for one offense or for multiple offenses in the aggregate) that amount to 'de facto' life without parole because they foreclose the defendant's release from prison for all or virtually all of his expected remaining life span." Ante at 844. The Majority Opinion further assumes without deciding that Miller and Montgomery apply to Mr. Williams' sentence to die in prison even though it was not mandatorily imposed. Id. at 845. But my colleagues in the Majority unnecessarily sidestep a determination that Mr. Williams was unconstitutionally sentenced based on its assessment that we do not possess the facts to resolve with sufficient precision whether Mr. Williams' period of ineligibility for parole under his aggregate sentence is "close to his expected life span." Id. at 840. We know all we need to know in this case to make this determination.
The Majority Opinion acknowledges that Mr. Williams was sentenced to an aggregate of 62 years to life in prison for offenses he committed at age 17. Ante at 841-42. In his pro se § 23-110 motion, Mr. Williams argued that this sentence condemned him to die in prison. He relied on his understanding that "[t]he life expectancy for a black man is in [his] 70s." In its Opposition to Mr. Williams' § 23-110 motion, the government did not contest his assertion and, as Centers for Disease Control and Prevention (CDC)[6] statistics cited by both Mr. Williams and the government on appeal demonstrate, Mr. Williams was correct.[7]
*861 Mr. Williams is now 46 years old. According to the CDC, 45-year-old men[8] in the United States are expected to live an additional 34.2 years (to age 79.2); this figure drops to 31.4 years (76.4) for "Black" men and drops again to 31.2 years (76.2) for "non-Hispanic Black men."[9] This figure would presumably drop even lower if the CDC further disaggregated data for non-Hispanic Black men, like Mr. Williams, who are living in prison.[10] Contrast these life expectancy figures with one number-79-the age Mr. Williams, incarcerated at 17, would have to reach to become eligible for parole under his aggregate minimum sentence of 62 years.[11] See ante at 841 & n.14.
Thus if the question is whether Mr. Williams' aggregate minimum sentence gives him any "hope for some years of life outside prison walls," Montgomery , 136 S.Ct. at 737, the honest answer is no.[12] The *862 government's argument to the contrary is premised on a distorted understanding of what it means to have a sentence that gives some "hope" of living "some years of [one's] life outside prison." Id. It argues that "even when parole eligibility takes decades-beyond a person's average life expectancy-the possibility of parole means that the offender still has some hope for release" (emphasis in original). But the possibility of being released on parole beyond one's life expectancy if one is so lucky as to beat the odds of death does not give a defendant "hope" in the sense that the Supreme Court, focused on juveniles' corrigibility and ability to learn to become productive members of society, meant in Montgomery .[13]
On the record before us, we must conclude that Mr. Williams' Eighth Amendment right as a juvenile offender not to be sentenced to die in prison was violated.
C. Mr. Williams Is Entitled to Habeas Relief Under D.C. Code § 23-110.
Mr. Williams is in precisely the same position as Mr. Montgomery before he prevailed in the Supreme Court. Mr. Williams is being held in prison pursuant to a life without parole sentence that violates the Eighth Amendment, and he has been wrongly denied habeas relief. As the Supreme Court explained in Mr. Montgomery's case, a juvenile offender's unconstitutional sentence to die in prison is void. See Section I.A supra . Such a sentence is without legal force "from the start"; it is "a nullity." Brown v. United States , 795 A.2d 56, 61 (D.C. 2002) (considering a sentencing challenge under the Double Jeopardy Clause); see also , e.g. , Veal , 784 S.E.2d at 409-11 (concluding that appellant's sentence, imposed in violation of Miller and Montgomery , is not merely "voidable," but "void"). The Supreme Court further held in Mr. Montgomery's case that the Louisiana courts reviewing his state collateral review petition were obligated under the Supremacy Clause to enforce his Eighth Amendment right not to be sentenced as a juvenile offender to life without parole and to afford him relief from his unconstitutional sentence. See Section I.A supra .
In Mr. Williams' case, there is no conflict between state law and federal constitutional rights, and thus no need to look to the Supremacy Clause. As a federal city, the District of Columbia is subject to the legislative oversight of Congress, and in fact Congress drafted the District's local habeas statute, D.C. Code § 23-110 (2012 Repl.). District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, 84 Stat. 473, 608-09 (1970). This statute directs D.C. prisoners to seek relief in D.C. courts from sentences imposed in violation of federal constitutional rights. Section (a) provides that "[a] prisoner in custody under *863 sentence of the Superior Court claiming the right to be released upon the ground that ... the sentence was imposed in violation of the Constitution of the United States ... may move the court to vacate ... the sentence."[14] Furthermore, the statute plainly commands that a motion thereunder be granted if a D.C. prisoner establishes that his constitutional rights have been violated. Section (c) states that "[i]f the [habeas] court finds that ... there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner, resentence him , grant a new trial, or correct the sentence , as may appear appropriate." Id. (emphasis added). Under § 23-110, Mr. Williams is entitled to habeas relief in the form of a new sentence.
II. The Sentence Review Procedure Afforded Under D.C. Code § 24-403.03 Does Not Cure the Violation of Mr. Williams' Substantive Eighth Amendment Rights, and No Other Jurisdiction Has Relied On a Similar Statute To Forgo the Resentencing Required Under Montgomery .
Notwithstanding the plain language of § 23-110 and Mr. Williams' clear entitlement to relief thereunder, the Majority Opinion upholds the trial court's denial of his § 23-110 motion. Ante at 855. My colleagues in the Majority reason that Mr. Williams' habeas claim is "now moot" by virtue of the enactment of IRAA, or more specifically D.C. Code § 24-403.03 (2018 Supp.). Ante at 849. They assert that D.C. Code § 24-403.03"effectively convert[s]" lengthy sentences with no realistic and meaningful possibility of release "into one with multiple realistic and meaningful possibilities of release," and thus fulfills "the constitutional imperatives declared in Graham , Miller , and Montgomery [.]" Ante at 849, 846.
The Majority Opinion is mistaken. D.C. Code § 24-403.03 (reproduced at Appendix A) is not a constitutional cure-all. It does not give Mr. Williams the substantive relief to which he is entitled now: a constitutional sentence. At most, it provides Mr. Williams with a procedure to have his sentence reviewed and reduced in the future, and it does not as a statutory matter even guarantee that his Eighth Amendment rights will be fulfilled at that point, because it leaves wholly to the court's discretion whether to reduce his sentence. By denying Mr. Williams the relief that he is constitutionally due, we flout the Supreme Court's Eighth Amendment directives (see Section I.A supra ); undermine the adequacy and effectiveness of our habeas review[15] (see Section I.C su pra *864 ); and negatively distinguish ourselves from other jurisdictions, where juvenile offenders with unconstitutional and void sentences to die in prison have received new, constitutionally compliant sentences (see Section II.B(2) infra ).
A. D.C. Code § 24-403.03 Does Not Cure the Violation of Mr. Williams' Eighth Amendment Rights.
The Majority Opinion states that the enactment of D.C. Code § 24-403.03"effectively convert[ed]" Mr. Williams' unconstitutional sentence into a constitutional one, and that this "transform[ation]" "equate[s] to a resentencing in all but name." Ante at 849, 849. According to my colleagues in the Majority, this is so because the discretionary sentence review procedure afforded under D.C. Code § 24-403.03 gives Mr. Williams "an opportunity" to seek release via resentencing. Ante at 848-49. Therein lies a fatal flaw in the Majority Opinion's logic. D.C. Code § 24-403.03 only gives Mr. Williams more procedure: the opportunity to seek eventual review of his unconstitutional sentence. Ante at 849 (asserting that D.C. Code § 24-403.03's "new procedure provid[es] all that the Eighth Amendment requires"). But giving Mr. Williams more procedure in the form of sentence review does not cure his substantive Eighth Amendment violation.[16] Mr. Williams is entitled to much more than an opportunity to have his constitutional rights fulfilled. He is entitled to a constitutional sentence.[17] See Section I.A supra .
Yet my colleagues in the Majority posit that, simply by virtue of D.C. Code § 24-403.03's existence, the substantive nature of the unconstitutional sentence Mr. Williams actually received-the sentence that is holding him in prison-has changed. In their view, Mr. Williams' 62-year sentence only remains in place "as a purely formal matter." Ante at 849.
To state the obvious, when a juvenile offender like Mr. Williams has been unconstitutionally sentenced to die in prison and seeks sentence review under D.C. Code § 24-403.03, he is seeking review of the *865 sentence he has-i.e., his unconstitutional sentence. The only decision the trial court is authorized to make upon receipt of a motion for sentence review under D.C. Code § 24-403.03 is whether to give him a new sentence or to hold his old sentence in place (by denying the motion). D.C. Code § 24-403.03(e). But if his sentence had in fact been "transformed" into one that gave him some hope for years of life outside prison, the decision would not be whether to resentence him-it would be whether to release him from prison or continue to incarcerate him.
The Majority Opinion conflates the decision to grant or deny a motion for a new sentence with the decision to grant or deny release from prison when it asserts that Mr. Williams' substantive Eighth Amendment violation is cured because sentence review under D.C. Code § 24-403.03 gives him the opportunity for release. Ante at 848-49; see also notes 1 & 2 supra . But the idea that an unconstitutional sentence is somehow rendered constitutional by the mere availability of a later sentence review procedure cannot be reconciled with Supreme Court precedent.
First, the Supreme Court in Graham considered and rejected the proposition that a juvenile defendant's sentence could be altered and rendered constitutional by the possibility that some procedure outside the sentence (clemency) might shorten his imprisonment. 560 U.S. at 70, 130 S.Ct. 2011. Second, looking to the existence of a later sentence review procedure to substantively cure an unconstitutional sentence contradicts swaths of Eighth Amendment jurisprudence holding that where a substantive sentencing bar is categorical for a class of defendants, persons falling within that class must be identified before the sentence is imposed to prevent them from being subjected to an unconstitutional sentence. Montgomery , 136 S.Ct. at 734. The untenable implication of the Majority Opinion's analysis is that courts may disregard such categorical bars before sentencing and subject defendants to unconstitutional sentences, provided some after-the-fact (and perhaps far in the future) sentence review is available. Thus, for example, courts could continue to indiscriminately sentence juvenile offenders to serve life sentences in violation of Graham and Miller , or ignore a capital defendant's Atkins claim at the time of sentencing, as long as the defendant had some opportunity to have his sentence reviewed post-conviction. Third, the Majority Opinion entirely misses the point when it asserts that, because "[t]here is no constitutional magic in the word 'parole,' " it is immaterial that D.C. Code § 24-403.03 does not "directly" make a juvenile offender eligible for release. Ante at 849; see also Id. at 851 n.66 (asserting the "essential equivalency" of parole and IRAA review).[18] A fundamental premise of Graham , Miller , and Montgomery is that a defendant's sentence is constitutionally significant. A sentence that permits a juvenile offender to be released at a time when he can hope to live some years outside of prison (either by directing eligibility for parole or imprisonment for a shorter term of years) is constitutionally legitimate; a sentence that does not is unconstitutional and void. See Section I.A supra .
*866 Section 24-403.03 does not fulfill the substantive right that Mr. Williams possesses right now to a constitutional sentence under the Eighth Amendment. Further, the discretionary review available to a juvenile offender under § 24-403.03 after he serves a minimum of twenty years of his sentence does not afford him the protection he is due under the Eighth Amendment, even belatedly. See note 4 supra . Section 24-403.03 was enacted as part of the IRAA, a broad package of reforms meant to "ensure that the District continue[d] its progress toward adopting ... best practices" in the administration of juvenile justice.[19] Within the IRAA, attention was diffused over a range of subjects, including record-sharing, a mediation pilot program, research into the root causes of juvenile crime, and elimination of mandatory minimums. Committee Report at 44. These reforms were seemingly inspired by the same body of research regarding juvenile development that provided the foundation for the Court's decisions in Graham , Miller , and Montgomery . But with only one exception,[20] IRAA's various provisions, including § 24-403.03, had nothing to do with ensuring juvenile offenders were sentenced in compliance with the dictates of the Eighth Amendment.
By its plain text, § 24-403.03 merely establishes an all-purpose mechanism to take a second look at juvenile offenders' sentences to see if, in a court's discretion, a reduction might be warranted. See Appendix A infra ;[21] see also ante at 846-47 (acknowledging that a juvenile offender need not claim he is sentenced in violation of the Eighth Amendment to obtain sentencing relief under § 24-403.03 ). By requiring the movant to serve twenty years of his sentence before he may seek review, D.C. Code § 24-403.03(a)(1), this mechanism assumes the legality of the sentence the movant asks to be reviewed. It allows a defendant to file "an application for a sentence modification." D.C. Code § 24-403.03(b)(1). It directs the trial court to "consider" a myriad of factors, D.C. Code § 24-403.03(c), some of which may bear on the constitutional question of corrigibility, but others of which either are unlikely to inform such an assessment or clearly do not, see, e.g. , D.C. Code § 24-403.03 (c) (2), (4), (6), (11) (directing, inter alia , consideration of "[t]he nature of the offense"; "[a]ny report or recommendation received from the United States Attorney"; "[a]ny statement ... by a victim of the offense ... or by a family member of the victim"; and "[a]ny other information the court deems relevant"). Corrigibility is never *867 identified as a dispositive concern that mandates vacatur of a sentence of life imprisonment without parole and imposition of a constitutionally-compliant sentence. Rather the statute leaves the ultimate decision to grant any sentencing relief to the court's discretion. D.C. Code § 24-403.03(a) (providing that a trial court "may reduce a term of imprisonment" if, after "considering" the broad array of enumerated factors, it finds "the defendant is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification" (emphasis added) ); see also ante at 848-49 (acknowledging sentencing relief could be denied, and giving examples of the sentencing relief a court "could" provide in its discretion).[22] The result is that, at least as a statutory matter, a corrigible juvenile offender unconstitutionally sentenced to die in prison could be denied a discretionary sentence reduction after a § 24-403.03 hearing and remain incarcerated pursuant to an unconstitutional sentence.
The inadequacy of D.C. Code § 24-403.03 as drafted to provide Mr. Williams with a Miller -compliant procedure for resentencing is no accident. As the legislative history reveals, the statute was never intended to serve this function. See Appendix B infra . The first of the three paragraphs of the section in the Judiciary Committee's report discussing this provision begins with an acknowledgment of the Supreme Court's decision in Graham prospectively banning life sentences for nonhomicide juvenile offenders; then it pivots to note that "several states ... have taken this opportunity to establish or strengthen sentence review provisions for juveniles sentenced to lengthy terms."[23] Committee *868 Report at 14. The second paragraph then explains that other jurisdictions have set up discretionary sentence review mechanisms for juvenile offenders, highlighting Florida-which resentences juvenile homicide offenders who were unconstitutionally sentenced to life without parole under a separate statute, and in addition allows them to seek a sentence reduction under its sentence review statute. See note 32 infra . The third paragraph explains that "a similar sentence review mechanism" is established in D.C. Code § 24-403.03. The Committee Report never mentions the Supreme Court's expansion of constitutional limitations on the sentencing of juvenile offenders in Miller and Montgomery , much less the need to fix previously-imposed unconstitutional sentences as required by Montgomery. Thus, both in what it says and does not say,[24] the Committee Report makes clear that the Council's sole objective in enacting D.C. Code § 24-403.03 was to provide an all-purpose review mechanism for juvenile offenders serving lawful albeit lengthy sentences.
In an apparent concession, the Majority Opinion ultimately asserts that "what matters is not whether the Council specifically intended " § 24-403.03"to remedy unconstitutional LWOP sentences, but whether [the statute] actually does remedy them." Ante at 847 n.50 (emphasis in original). The Majority Opinion commits triple error by (1) disregarding the statute Congress enacted requiring the District's courts to correct unconstitutional sentences, § 23-110, see Section I.C supra ; (2) exercising policymaking power reserved to the legislature to select a different statute for juvenile offenders seeking relief from their unconstitutional and void sentences to die in prison; and (3) choosing D.C. Code § 24-403.03 as the remedial mechanism, even though it does not provide the substantive cure to which these juvenile offenders are entitled under the Eighth Amendment as interpreted by the Supreme Court in Montgomery .
The Majority Opinion is mistaken that the procedure in § 23-403.03 provides Mr. Williams with relief from his substantively unconstitutional sentence. That sentence remains unconstitutional and void.
B. The Majority Opinion Is Blazing an Unauthorized New Trail.
The Majority Opinion takes the position that it is authorized to hold Mr. Williams' unconstitutional sentence in place and offer him only a discretionary sentence review mechanism because (1) the Supreme Court in Montgomery "left it up to the states to devise appropriate procedures to vindicate the Eighth Amendment's requirements in this area," ante at 850; and (2) other jurisdictions are doing the same, Id. at 850-51. The Majority Opinion misinterprets *869 Montgomery : It does not require States to "relitigate" individual, unconstitutional sentences, but it does require them to replace juvenile offenders' unconstitutional and void sentences with sentences that comply with the Eighth Amendment. And the Majority Opinion is mistaken about other jurisdictions' responses to Montgomery . No state supreme court has relied on a discretionary sentence review statute to avoid resentencing juvenile offenders unconstitutionally sentenced to die in prison. Rather, the one state supreme court that has squarely considered whether a sentence review statute suffices as a remedy for a juvenile offender unconstitutionally sentenced to die in prison has held that it cannot.
1. The Supreme Court did not authorize states to forgo resentencing of juvenile offenders serving unconstitutional life without parole sentences.
To the extent that the Majority Opinion takes the position that resentencing is not required to cure Eighth Amendment violations as defined by Graham , Miller , and Montgomery , it is mistaken. Although the Supreme Court in Montgomery gave states some leeway in crafting a remedy for substantively unconstitutional sentences imposed on juvenile offenders, this leeway was expressly limited to allowing states to determine how to replace these individuals' unconstitutional and void sentences. The Supreme Court did not authorize states to offer some lesser procedural remedy, like a discretionary sentence review procedure, and in the meantime hold juvenile offenders' unconstitutional sentences in place.
Before it broached the topic of remedy, the Court in Montgomery had already explained that the bar on life without parole sentences is substantive, and sentences imposed in violation of substantive rights are "void." 136 S.Ct. at 731. The Court had further cautioned that "[f]idelity to th[e] important principle of federalism ... should not be construed to demean the substantive character of the federal right at issue." Id. at 735. Against that backdrop, the Court stated that "[g]iving Miller retroactive effect ... does not require States to relitigate sentences ... in every case where a juvenile offender received mandatory life without parole." Id. at 736. It offered an alternative: In lieu of individual resentencing proceedings, states could-like Wyoming-simply decide to categorically resentence all of these defendants via legislation: "A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by [individually] resentencing them. See, e.g. , WYO. STAT. ANN. § 6-10-301(c) (2013)."[25] Id. The court concluded that either individual resentencing or categorical resentencing "ensures that juveniles whose crimes reflected only transient immaturity ... will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. (emphasis added).
Montgomery does not authorize the Majority Opinion's holding. It makes no sense that it would. Giving states the leeway the Majority Opinion claims would *870 negate the rest of the Supreme Court's opinion declaring that a sentence condemning a juvenile offender to die in prison is substantively unconstitutional and void. See Section I.A supra .
2. Other states are not relying on discretionary sentence review statutes in lieu of resentencing to cure juvenile offenders' unconstitutional life sentences.
It should be a red flag that no other state supreme court has interpreted Montgomery to authorize it to forgo resentencing and hold in place sentences that violate juvenile offenders' substantive Eighth Amendment rights under Graham , Miller , and Montgomery . Instead, states addressing Eighth Amendment sentencing violations have acknowledged their responsibility to resentence such juvenile offenders, either categorically (through legislation[26] and court decisions[27] ) or individually.[28]
To be sure, other states have enacted discretionary sentence review statutes like D.C. Code § 24-403.03. See, e.g. , CAL. PENAL CODE § 1170 (West 2012) (amended 2018); see also ante at 847 n.48 (noting the District's statute was modeled on Delaware and Florida's law, and that North Dakota has followed suit). But no court from these states has upheld the use of these statutes for the purpose of legislatively fixing sentences rendered unconstitutional *871 under Graham , Miller , and Montgomery . These sentence review statutes are a complement to, not a substitute for, the resentencing required under Montgomery . California and Florida make this clear. They both require resentencing for juvenile offenders unconstitutionally sentenced to die in prison,[29] and permit discretionary sentence review thereafter.[30]
The Majority "focus[es] on Florida,"[31] which it asserts "considered the constitutional adequacy of its [ D.C. Code § 24-403.03 ] counterpart" in Horsley v. State , 160 So.3d 393 (Fla. 2015). Ante at 851 n.64. This was not the question in Horsley . In that case, the Florida Supreme Court was trying to decide which of three options would "remedy th[e] federal constitutional infirmity for those juvenile offenders whose sentences are now unconstitutional, under Miller , in violation of the Eighth Amendment," 160 So.3d at 399 : (1) "revival" of a statute that would convert these sentences into life sentences with the possibility of parole after 25 years, id. at 400 ; (2) individualized resentencing, Id. ; or (3) retroactive application of a new law, Id. at 401, that "provid[ed] judicial discretion and term-of-years sentencing options" for juvenile offenders as well as "subsequent judicial review," id. at 405. The court determined that the third option was the proper remedy: resentencing within legislated boundaries and additional judicial review. Id. at 405.[32] Thus Florida has not opted to *872 deny resentencing to juvenile offenders serving unconstitutional and void sentences to die in prison and to instead rely solely on a discretionary sentence review statute. It cannot provide the District a source of support for this approach.
California's consideration of this issue, on the other hand, cannot be summarily dismissed as distinguishable. See ante at 851-53. The California Supreme Court has expressly considered whether courts can forgo resentencing and rely on discretionary sentence review alone to remedy the violation of Eighth Amendment rights of juvenile offenders serving sentences to die in prison. It has concluded that courts cannot do this.
The California Supreme Court first examined how its sentence review statute interacted with juvenile offenders sentenced to die in prison in People v. Gutierrez , 58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245 (2014), a post- Graham and - Miller , but pre- Montgomery , direct appeal decision. The government had argued that the state's sentence review statute, CAL. PENAL CODE § 1170(d)(2) (West 2012) (amended 2018), eliminated any constitutional concern with a statutory presumption in favor of life without parole for certain juvenile offenders, and specifically that the availability of future review effectively altered the defendant's sentence. Id. 171 Cal.Rptr.3d 421, 324 P.3d at 267. The court squarely rejected this argument, explaining that a life without parole sentence "remains fully effective after the enactment of [the sentence review statute].... That is why [the sentence review statute] sets forth a scheme for recalling the sentence and resentencing the defendant." Id. 171 Cal.Rptr.3d 421, 324 P.3d at 266 (emphasis in the original). The court also rejected the argument that the sentence review statute gave juvenile offenders all to which they were constitutionally entitled. Id. 171 Cal.Rptr.3d 421, 324 P.3d at 267. Precisely like the Majority Opinion in this case, see, e.g. , ante at 845 & n.37, the government had relied on Miller 's "cf." citation to language in Graham discussing the need to ensure juvenile offenders have a "meaningful opportunity to obtain release." 171 Cal.Rptr.3d 421, 324 P.3d at 267. The California Supreme Court was unpersuaded:
... Graham spoke of providing juvenile offenders with a "meaningful opportunity to obtain release" as a constitutionally required alternative to-not as an after-the-fact corrective for-"making the judgment at the outset that those offenders never will be fit to reenter society." ( Graham , at p. 75, 130 S.Ct. 2011, italics added.) Likewise, Miller 's "cf." citation to the "meaningful opportunity" language in Graham occurred in the context of prohibiting "imposition of that harshest prison sentence" on juveniles under a mandatory scheme. ( Miller , at p. 479, 132 S.Ct. at p. 2469.) Neither Miller nor Graham indicated that an *873 opportunity to recall a sentence of life without parole 15 to 24 years into the future would somehow make more reliable or justifiable the imposition of that sentence and its underlying judgment of the offender's incorrigibility "at the outset." ( Graham , at p. 75, 130 S.Ct. 2011.)
Indeed, the high court in Graham explained that a juvenile offender's subsequent failure to rehabilitate while serving a sentence of life without parole cannot retroactively justify imposition of the sentence in the first instance: "Even if the State's judgment that Graham was incorrigible were later corroborated by prison misbehavior or failure to mature, the sentence was still disproportionate because that judgment was made at the outset. " ( Graham , supra , 560 U.S. at p. 73, 130 S.Ct. 2011, italics added.) By the same logic, it is doubtful that the potential to recall a life without parole sentence based on a future demonstration of rehabilitation can make such a sentence any more valid when it was imposed. If anything, a decision to recall the sentence pursuant to section 1170(d)(2) is a recognition that the initial judgment of incorrigibility underlying the imposition of life without parole turned out to be erroneous. Consistent with Graham , Miller repeatedly made clear that the sentencing authority must address this risk of error by considering how children are different and how those differences counsel against a sentence of life without parole "before imposing a particular penalty." ( Miller , supra , 567 U.S. at p. 483, 132 S.Ct. at p. 2471, italics added; see id. at pp. 479-80, 490, 132 S.Ct. at pp. 2469, 2475.)
Gutierrez , 171 Cal.Rptr.3d 421, 324 P.3d at 267.[33]
After Montgomery , the California Supreme Court revisited the subject of sentence review in People v. Franklin , 63 Cal.4th 261, 202 Cal.Rptr.3d 496, 370 P.3d 1053 (2016), and upheld a different statute, CAL. PENAL CODE § 3051 (West 2016), as a remedy for juvenile offenders challenging their unconstitutional sentences to die in prison on direct appeal. Franklin , 202 Cal.Rptr.3d 496, 370 P.3d at 1063. This statute operated to categorically resentence certain juvenile offenders by mandating that they "shall be eligible for release on parole" after serving a term that varies depending on the underlying crime. CAL. PENAL CODE § 3051(b)(3). The court explained that this categorical resentencing statute "effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years." Franklin , 202 Cal.Rptr.3d 496, 370 P.3d at 1063. By contrast, the court noted that § 1170, the sentence review statute it had analyzed in Gutierrez , had "no similar [reforming] effect on a juvenile offender's LWOP sentence," which under that statute "remains fully effective ." Id. (quoting Gutierrez , 171 Cal.Rptr.3d 421, 324 P.3d at 266 (emphasis in original) ).[34]
*874 Finally, in In re Kirchner , 2 Cal.5th 1040, 216 Cal.Rptr.3d 876, 393 P.3d 364 (2017), the California Supreme Court was asked to determine if its understanding that its discretionary review statute did not provide a cure for juvenile offenders unconstitutionally sentenced to die in prison extended to juvenile offenders seeking post-conviction relief. An intermediate appellate court had "acknowledged Gutierrez 's determination that the prospect of resentencing under [the sentence review statute] represents an inadequate response to the concerns implicated by a court's failure" to provide a constitutional sentence to a juvenile offender, but had regarded "a collateral challenge to a sentence, rather than a direct appeal," as distinguishable. Id. , 216 Cal.Rptr.3d 876, 393 P.3d at 371. The California Supreme Court reversed, and, consistent with Gutierrez (and Franklin ), held that § 1170 was not an adequate remedy at law that would obviate habeas relief.[35] Id. 216 Cal.Rptr.3d 876, 393 P.3d at 365, 373.
The California Supreme Court determined that discretionary sentence review under § 1170"was not designed to provide a remedy for" Miller error and was "not well suited to serve this purpose" for two key reasons. First, the court explained that the statutory "recall and resentencing process anticipates the lawfulness of a sentence of life without parole potentially subject to recall under its terms." Id. 216 Cal.Rptr.3d 876, 393 P.3d at 372 ; see also Id. 216 Cal.Rptr.3d 876, 393 P.3d at 365 (explaining the discretionary resentencing statute was "designed to revisit lawful sentences of life without parole") (emphasis in the original). Second, the court explained that § 1170 did not actually guarantee that a juvenile offender who had been unconstitutionally sentenced would receive a new, constitutional sentence.[36]
*875 Id. 216 Cal.Rptr.3d 876, 393 P.3d at 373 (explaining that "under Miller , prior to sentencing a juvenile offender to life without parole, a court must give proper consideration to" corrigibility factors enumerated in Gutierrez , and that "the possibility of consideration [of the factors enumerated in Gutierrez under § 1170 ] is not the same as the certainty that Miller and Montgomery demand"[37] (emphasis in original) ); id. 216 Cal.Rptr.3d 876, 393 P.3d at 373 (explaining that "in crucial respects, [ § 1170 ] is different from statutes that automatically provide a timely parole hearing to juvenile offenders sentenced to terms that otherwise might raise Eighth Amendment concerns. By simply transforming the affected sentences to life with parole terms, those laws avoid the Miller issues associated with the earlier sentences."); see also Id. 216 Cal.Rptr.3d 876, 393 P.3d at 374 (recognizing "the possibility that a resentencing that accounts for the Miller factors will occur under [ § 1170 ] does not represent an adequate substitute for the timely and certain resentencing hearings that Miller ... and Montgomery ... require" for juvenile offenders unconstitutionally sentenced to die in prison).
Accordingly, the court in Kirchner concluded that discretionary sentence review afforded under § 1170"does not constitute an adequate remedy for Miller error that would displace habeas corpus proceedings," and reversed and remanded "the matter ... for a resentencing consistent with Montgomery , ... Miller , ... and Gutierrez ." Id. 216 Cal.Rptr.3d 876, 393 P.3d at 375. The Majority Opinion incorrectly dismisses California's persuasive body of precedent in Gutierrez , Franklin , and Kirchner .
My colleagues in the Majority declare that other states have relied on "judicial sentence review procedures similar to [ § 24-403.03 ] to provide juvenile offenders" sentenced to die in prison the relief they are due under Graham , Miller , and Montgomery , ante at 850-51, when that is demonstrably not the case. When they are unable to support that proposition, they seek to obscure the singularity of their holding by asserting that it "is of little moment" "even if a few other State courts have rejected their States' judicial review mechanisms as an alternative to resentencing juvenile offenders serving unconstitutional LWOP sentences[.]" Ante at 852. The reality is this: The District of Columbia Court of Appeals will be the first and only state supreme court to conclude that a discretionary sentence review procedure like D.C. Code § 24-403.03 addresses and cures Eighth Amendment injury for a juvenile offender unconstitutionally sentenced to die in prison. As a result of the Majority Opinion, the District will stand embarrassingly alone in refusing to address and correct juvenile offenders' unconstitutional and void sentences.
* * *
Mr. Williams is serving a 62-year aggregate sentence for an offense he committed at age 17. By the terms of his sentence, he is ineligible for parole until he is 79 years old. He is serving a sentence to die in prison. For all but the rare incorrigible juvenile offender, which Mr. Williams was never determined to be, the Eighth Amendment, as interpreted by Graham , Miller , and Montgomery , bars such a sentence and renders it void. Per Montgomery , Mr. Williams has a substantive Eighth Amendment right to a new sentence. Per D.C. Code § 23-110, it is our responsibility to vindicate that right. The review procedure afforded by D.C. Code § 24-403.03 does not relieve us of that obligation or transform Mr. Williams' unconstitutional sentence into a constitutional one. Because the denial of Mr. Williams' § 23-110 motion should be reversed, I respectfully dissent.
*876 APPENDIX A
D.C. Code § 24-403.03. Modification of an imposed term of imprisonment for violations of law committed before 18 years of age.
(a) Notwithstanding any other provision of law, the court may reduce a term of imprisonment imposed upon a defendant for an offense committed before the defendant's 18th birthday if:
(1) (A) The defendant was sentenced pursuant to § 24-403 and has served at least 20 years in prison and not yet become eligible under § 24-403.04 for release on parole from the sentence imposed; or
(B) The defendant was sentenced pursuant to § 24-403.01 or was committed pursuant to § 24-903, and has served at least 20 years in prison; and
(2) The court finds, after considering the factors set forth in subsection (c) of this section, that the defendant is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification.
(b) (1) A defendant convicted as an adult of an offense committed before his or her 18th birthday may file an application for a sentence modification under this section. The application shall be in the form of a motion to reduce the sentence. The application may include affidavits or other written material. The application shall be filed with the sentencing court and a copy shall be served on the United States Attorney.
(2) The court may direct the parties to expand the record by submitting additional written materials related to the motion. The court shall hold a hearing on the motion at which the defendant and the defendant's counsel shall be given an opportunity to speak on the defendant's behalf. The court may permit the parties to introduce evidence.
(3) The defendant shall be present at any hearing conducted under this section unless the defendant waives the right to be present. Any proceeding under this section may occur by video teleconferencing and the requirement of a defendant's presence is satisfied by participation in the video teleconference.
(4) The court shall issue an opinion in writing stating the reasons for granting or denying the application under this section.
(c) The court, in determining whether to reduce a term of imprisonment pursuant to subsection (a) of this section, shall consider:
(1) The defendant's age at the time of the offense;
(2) The nature of the offense and the history and characteristics of the defendant;
(3) Whether the defendant has substantially complied with the rules of the institution to which he or she has been confined and whether the defendant has completed any educational, vocational, or other program, where available;
(4) Any report or recommendation received from the United States Attorney;
(5) Whether the defendant has demonstrated maturity, rehabilitation, and a fitness to reenter society sufficient to justify a sentence reduction;
(6) Any statement, provided orally or in writing, provided pursuant to § 23-1904 or 18 U.S.C. § 3771 by a victim of the offense for which the defendant is imprisoned, or by a family member of the victim if the victim is deceased;
(7) Any reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals;
*877 (8) The defendant's family and community circumstances at the time of the offense, including any history of abuse, trauma, or involvement in the child welfare system;
(9) The extent of the defendant's role in the offense and whether and to what extent an adult was involved in the offense;
(10) The diminished culpability of juveniles as compared to that of adults, and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences, which counsel against sentencing them to a lifetime in prison; and
(11) Any other information the court deems relevant to its decision.
(d) If the court denies the defendant's 1st application under this section, a court shall entertain a 2nd application under this section no sooner than 5 years after the date that the order on the initial application becomes final. If a sentence has not been reduced after a 2nd application, a court shall entertain a 3rd and final application under this section no sooner than 5 years following the date that the order on the 2nd application becomes final. No court shall entertain a 4th or successive application under this section.
(e) Any defendant whose sentence is reduced under this section shall be resentenced pursuant to § 24-403, § 24-403.01, or § 24-903, as applicable.
APPENDIX B
D.C. Council, Committee on the Judiciary, Report on Bill 21-0683, the "Comprehensive Youth Justice Amendment Act of 2016" (Oct. 5, 2016), Section "F. Age-Appropriate Sentencing"
Subsection c. Establishing a Sentence Review Procedure for Juveniles
In Graham , the Supreme Court held that juveniles given life sentences must be given "some realistic opportunity to obtain release" so that a juvenile defendant can "demonstrate that he is fit to rejoin society."[67] The Court left it to the states to "explore the means and mechanisms for compliance" as long as they do not make "the judgment at the outset that those offenders never will be fit to reenter society."[68] What a "realistic opportunity to obtain release" should look like has been the subject of nationwide discussion.[69] Several states, including those without parole, have taken this opportunity to establish or strengthen sentence review provisions for juveniles sentenced to lengthy terms.
In 2014, Florida enacted a provision that, with certain exceptions, allows a court to review the sentence of a juvenile charged as an adult for an offense committed as a juvenile after 15, 20, or 25 years depending on the length of the original sentence.[70] Delaware likewise created a judicial review mechanism to review the sentences of offenders who committed crimes prior to their eighteenth birthday after 20 or 30 years, depending on the crime.[71] At the Federal level, legislation is under consideration that would require a sentence review for defendants convicted as an adult for an offense committed as juvenile after they served 20 years.[72]
*878 The Committee Print adopts a similar sentence review mechanism for the District of Columbia. The bill permits the court to reduce a term of imprisonment imposed upon a defendant convicted as an adult of offenses committed prior to the defendant's 18th birthday if they have served 25 years in prison after a motion by the defendant. The court can take into consideration a number of factors, including the defendant's age at the time of the offense, the defendant's compliance with the rules of the institution in which they have been confined, the recommendations of the United States Attorney, whether the defendant has demonstrated maturity and rehabilitation, any statement from the victim, and any other information the court deems relevant to its decision. If the defendant's initial application is unsuccessful, they may make a second application five years after the order on the first application, and a third and final application five years after the order on the second application.

This language describes the sentence to which a juvenile offender is constitutionally entitled. My colleagues in the Majority initially acknowledge that Graham , Miller , and Montgomery impose constitutional limits on sentencing juvenile offenders, ante at 843-44, but then shift focus. They latch on to language from Graham quoted in Miller that prospectively mandates how a juvenile offender must be constitutionally sentenced-i.e., a juvenile offender's sentence must provide "some meaningful opportunity to obtain release based on maturity and rehabilitation," ante at 845 (quoting Miller, 567 U.S. at 479, 132 S.Ct. 2455 (quoting Graham , 560 U.S. at 75, 130 S.Ct. 2011 ) ); see also ante at 850-but they disassociate the "meaningful opportunity to obtain release" requirement from the act of sentencing. My colleagues then conclude that with respect to juvenile offenders seeking habeas relief from unconstitutional sentences, this free-floating "meaningful opportunity to obtain release" may take the form of future, discretionary sentence review. In this way, my colleagues determine that a juvenile offender's actual sentence to die in prison, memorialized in a Judgment and Commitment Order, raises no constitutional concern. Ante at 845-46.
The Majority Opinion's determination that the actual sentence imposed by a court is immaterial for the purposes of an Eighth Amendment analysis cannot be reconciled with the Supreme Court's decisions in Graham , where the court held that the petitioner's sentence violated the Eighth Amendment because it "guarantee[d] he w[ould] die in prison," 560 U.S. at 79, 130 S.Ct. 2011 ; in Miller , which held that "sentencing scheme[s]" that require homicide juvenile offenders to die in prison are "forbid[den]," 567 U.S. at 479, 132 S.Ct. 2455 ; and last but not least in Montgomery , which, as I explain, held that a juvenile offender's Eighth Amendment right not to be sentenced to die in prison is a substantive constitutional right, 136 S.Ct. at 734.

Whether, once a juvenile offender has been lawfully sentenced , the Eighth Amendment imposes substantive limits on the actual punishment he may receive is a legitimate but distinct question not raised in this case. See, e.g. , Brown v. Precythe , 2018 WL 4956519, *7-10 (W.D. Mo. Oct. 12, 2018) (endorsing the view of other courts that a paroling authority must provide juvenile offenders whose unconstitutional sentences were converted to parolable sentences with a meaningful opportunity to be released from prison and holding that certain of Missouri's paroling authority's policies and procedures did not do this).

This was really only a question as to the holding in Miller . Graham 's absolute bar on sentencing juvenile nonhomicide offenders to die in prison was clearly a substantive rule, as it "place[d a] certain ... punishment[ ]" for a certain class of offenders "altogether beyond the State's power to impose." 136 S.Ct. at 729; see also id. at 727 (explaining that Louisiana's collateral review courts, post-Graham , allowed state prisoners "whose sentences had long been final" to seek resentencing on Eighth Amendment grounds for this reason).

In determining that Miller had announced a substantive rule, the Court acknowledged that "Miller 's holding has a procedural component ... requir[ing] a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." 136 S.Ct. at 734 (emphasis added). Accordingly, the court held that "a hearing where youth and its attendant characteristics are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." Id. at 735 (internal quotation marks and citations omitted). The Court cautioned, however, that this hearing "does not replace but rather gives effect to Miller 's substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." Id. (emphasis added). As a corollary, Montgomery made clear that when a juvenile offender faces a sentence condemning him to die in prison, this hearing must take place at sentencing, not at some point thereafter. Id. at 733-36.

The Majority Opinion notes that "the judge considered [Mr. Williams'] youth." Ante at 842 n.16. Mr. Williams argues, however, that to the extent the trial court considered his youth, it misapprehended it as an aggravating factor. In any event, mere "consideration" of youth is insufficient to render Mr. Williams' sentence constitutional. See Montgomery , 136 S.Ct. at 734 ("Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity.") (internal quotation marks omitted); see also Veal v. State , 298 Ga. 691, 784 S.E.2d 403, 412 (2016) (explaining that it was not enough for the sentencing court "generally to have considered Appellant's age and perhaps some of its associated characteristics" where the court did not "make any sort of distinct determination on the record that Appellant is irreparably corrupt or permanently incorrigible, as necessary to put him in the narrow class of juvenile murderers for whom an LWOP sentence is proportional under the Eighth Amendment as interpreted in Miller as refined by Montgomery .").

The CDC is a division of the United States Department of Health and Human Services. See CDC Organization , Centers for Disease Control and Prevention , https://www.cdc.gov/about/organization/cio.htm (last visited April 2, 2019).

Because these statistics show that Mr. Williams will remain in prison until at or very near the end of his life, we need not consider in this case arguments against using life expectancy statistics because they provide too little protection against disproportionate sentences for juvenile offenders. See Carter v. State , 461 Md. 295, 192 A.3d 695, 725-30, 734 n.54 (2018) ("[A]nother way of describing life expectancy is as the likely date of one's death. Withholding eligibility for parole-not release on parole-until the likely date of the defendant's death is just another way of saying 'life without parole' and is not consistent with a 'hope for some years of life outside prison walls.' " (emphasis omitted) ); see also People v. Contreras , 4 Cal.5th 349, 229 Cal.Rptr.3d 249, 411 P.3d 445, 451 (2018) (noting that by definition only 50 percent of people live past the average national life expectancy, and "[a]n opportunity to obtain release does not seem 'meaningful' or 'realistic' within the meaning of Graham if the chance of living long enough to make use of that opportunity is roughly the same as a coin toss.").

Both Mr. Williams and the government directed the court to this statistical table. See E. Arias, M. Heron, & J. Xu, 66 National Vital Statistics Reports No. 4 (Aug. 14, 2017), Table A, https://www.cdc.gov/nchs/data/nvsr/nvsr66/nvsr66_04.pdf (last visited April 2, 2019).

Because all of these statistics substantiate Mr. Williams' Eighth Amendment claim, see note 7 supra , we need not delve into the debate about the potential unfairness of using demographic data to calculate the life expectancy of a particular defendant. See State v. Zuber , 227 N.J. 422, 152 A.3d 197, 214 (2017).

Data indicate time in prison significantly reduces life expectancy because it exposes prisoners to increased health and safety risks. See Casiano v. Comm'r of Corr. , 317 Conn. 52, 115 A.3d 1031, 1046 (2015) (collecting cases and data indicating federal prisoners' life expectancy is shortened due in part to prisoners' exposure to violence and disease; that child offenders serving life without parole sentences in Michigan have an average life expectancy of 50.6 years; and that New York prisoners experience a two-year decline in life expectancy for each year they are incarcerated).

The Majority Opinion relies on the government's representation that Mr. Williams could have a slightly earlier parole eligibility date, at age 75. Ante at 841-42. Even if that were the correct number, it would not affect Mr. Williams' plain entitlement to relief. That said, the government's representation is based on a Bureau of Prisons figure that is not part of the record and appears to include a computation of "good time" credits. For our purposes, such credits are immaterial because they can be revoked at any time before a prisoner's release. The court-imposed sentence is what matters. See Pepper v. United States , 562 U.S. 476, 501 n.14, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) (quoting Barber v. Thomas , 560 U.S. 474, 482, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010) ); see also Bear Cloud v. State , 334 P.3d 132, 136 & n.3 (Wyo. 2014) (declining to consider good time in assessing whether a juvenile offender received an unconstitutional sentence to life imprisonment).

See, e.g. , Casiano , 115 A.3d at 1047-48 (holding that a 50-year sentence for felony murder with no possibility of release until the defendant is in his mid-60s is the functional equivalent of life without parole); Carter , 192 A.3d at 734-35 (holding that a 100-year aggregate sentence with parole eligibility after 50 years, when defendant will be 67, is equivalent to life without parole); Zuber , 152 A.3d at 201-02 (holding that 68- and 55-year sentences with no possibility of release until ages 85 and 72, respectively, are the functional equivalent of life without parole); Bear Cloud , 334 P.3d at 142-44 (holding that an aggregate 45-year sentence with no possibility of release until age 61 is the functional equivalent of life without parole).

The government also warns this court of the perils of getting into the "actuary business" and raises the fearful specter of "the slippery slope." But such an argument mistakenly "presumes that courts are unable or unwilling to make the kinds of reasoned distinctions that it is precisely in the nature of courts to make." Rong Yao Zhou v. Jennifer Mall Rest., Inc. , 534 A.2d 1268, 1277 n.7 (D.C. 1987) ; see also Irwin v. Gavit , 268 U.S. 161, 168, 45 S.Ct. 475, 69 L.Ed. 897 (1925) (Holmes, J.) (rejecting concerns about "where to draw the line" because "[t]hat is the question in pretty much everything worth arguing in the law"). In any event, this is not a hard case. While there may well be line-drawing challenges down the road, the potential prospect of struggling to set the minimum boundary of a de facto life without parole sentence should not cause us to disregard the obvious conclusion that Mr. Williams was (and is still) effectively sentenced to die in prison.

Unlike state prisoners who may seek collateral review in state court and then, if need be, in federal court, D.C. prisoners may not seek habeas relief in federal court "unless it also appears that the remedy by motion [under this section] is inadequate or ineffective to test the legality of his detention." See D.C. Code § 23-110(g).

If this court closes off habeas review, D.C. prisoners have another option: they can go to federal court to enforce their constitutional rights. See note 14 supra (discussing D.C. Code § 23-110(g) ); see also Ibrahim v. United States , 661 F.3d 1141, 1146 (D.C. Cir. 2011) (acknowledging that subsection (g) provides a "safety valve" when the District's courts bar review under § 23-110 of a federal constitutional claim); Williams v. Martinez , 586 F.3d 995, 999-1000 (D.C. Cir. 2009) (explaining that "[§] 23-110(g) divests federal courts of jurisdiction only over habeas petitions by prisoners who ... have an effective [§] 23-110 remedy available to them," and holding that D.C. prisoners may seek federal habeas review of ineffective assistance of appellate counsel claims because such claims may not be raised in a § 23-110 motion); see also Id. at 999 (explaining that the safety valve of § 23-110(g) is triggered even if the prisoner could not seek relief under § 23-110 but had "another means to seek his release"). Given the Majority Opinion's determination that D.C. Code § 24-403.03"moot[s]" a § 23-110 petition raising an Eighth Amendment challenge under Graham , Miller , and Montgomery , the District's juvenile offenders seeking relief from their unconstitutional sentences would seem to have no other choice but to go to federal court.

Accordingly, the Majority Opinion's detailed explication of the reasons the procedure offered under § 24-403.03"is superior" to a parole hearing, ante at 852-53, is beside the point. This analysis skips over the first step required by the Eighth Amendment: ensuring that a defendant has a constitutional sentence. Only once a constitutional sentence is in place do the attributes and relative merits of a parole or parole-like process become a concern. See note 2 supra .

The Majority Opinion acknowledges this when it states that if a juvenile offender successfully obtains relief under the discretionary sentence review afforded by D.C. Code § 24-403.03, then the sentence must comply with Graham , Miller , and Montgomery . Ante at 848 n.59. But my colleagues in the Majority ignore the fact that, until that point, the juvenile offender never proven to be incorrigible will be serving an unconstitutional sentence. See People v. Gutierrez , 58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245, 266 (2014) (discussed in Section II.B infra ). They also ignore the likelihood that keeping a juvenile offender's unconstitutional sentence to life imprisonment in place until a § 24-403.03 hearing would have the perverse effect of limiting a prisoner's future ability to demonstrate rehabilitation in such a proceeding. See Graham , 560 U.S. at 74, 130 S.Ct. 2011 (explaining that lengthy sentences limit the rehabilitative opportunities available to an incarcerated juvenile offender and thus bear on an offender's ability to obtain eventual release).

The Majority Opinion injects more confusion into its Eighth Amendment analysis when it likens the delay in the availability of sentence review under D.C. Code § 24-403.03 to what it calls the "waiting period for parole eligibility that the Supreme Court deemed constitutionally acceptable in Montgomery ." Ante at 848. Montgomery does not say and in no way suggests that states may institute a "waiting period" of any length of time before they do what Montgomery requires and give a new constitutional sentence to a juvenile offender who is serving an unconstitutional sentence to die in prison.

See D.C. Council, Committee on the Judiciary, Report on Bill 21-0683, the "Comprehensive Youth Justice Amendment Act of 2016" ("Committee Report") at 3 (Oct. 5, 2016). The Majority Opinion repeatedly refers to the IRAA when it means § 24-403.03.

The only provision that sought to directly implement the Supreme Court's Eighth Amendment jurisprudence was D.C. Code § 24-403.01(c)(2) (2018 Supp.), which prospectively banned life without parole sentences for juveniles. This was a separate initiative from the sentence review procedure; as the legislative history reflects, neither provision made reference to the other. See Committee Report at 11-12 (discussing the prospective life without parole sentencing ban) and Appendix B (discussing the sentence review procedure). The prospective life without parole sentencing ban was also largely a formal gesture, since the Council had already banned this sentence for juvenile offenders convicted of first- and second-degree murder fifteen years earlier, nine years before the Supreme Court decided Graham . See Committee Report at 12 (acknowledging that the penalty remained available for just three crimes).

The Majority Opinion's assertion notwithstanding, § 24-403.03 contains no "presumption" regarding "life without parole" sentences. Ante at 852 n.69. It does not address them.

D.C. Code § 24-403.03 also would seem to place the burden on the juvenile offender to show he is eligible for reduction of his (unconstitutional) sentence. The Majority Opinion justifies this burden-shifting by observing that individuals who seek release on parole bear the burden to establish they should be released into the community. See ante at 849-50. But the analogy is inapt. The Majority Opinion compares Mr. Williams to individuals with constitutional, parolable sentences. An individual with an unconstitutional sentence to die in prison cannot be made to bear the burden to show that the sentence should not be left in place. That burden falls to the government. See, e.g. , Davis v. State , 415 P.3d 666, 681 (Wyo. 2018) ("A faithful application of Miller and Montgomery requires ... a presumption against imposing a life sentence without parole, or its functional equivalent, on a juvenile offender"); Commonwealth v. Batts , 640 Pa. 401, 163 A.3d 410, 452-55 (2017) (placing the burden on the Commonwealth to prove beyond a reasonable doubt that a juvenile is irreparably corrupt so as to authorize imposing a life without parole sentence).
The Majority Opinion's assertion notwithstanding, see ante at 850-51, the Supreme Court never suggested otherwise in Montgomery . When the Court stated that juvenile offenders would be paroled if they "demonstrate the truth of Miller 's central intuition-that children who commit even heinous crimes are capable of change," 136 S.Ct. at 736 -it was referring to juvenile offenders with corrected, constitutional sentences, Id. (explaining that "[e]xtending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions" because "prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of Miller 's central intuition ....").

This initial reference to Graham is the foundation for the Majority Opinion's assertion that the Committee Report "makes explicit" the Council's intent to make § 24-403.03 the exclusive remedy for juvenile offenders who had received unconstitutional life sentences. Ante at 847 at n.50. But it is incongruous to interpret the Committee Report's citation to Graham in this manner. As noted above, the Supreme Court in Graham addressed the prospective sentencing of nonhomicide juvenile offenders to life imprisonment and never discussed what to do with nonhomicide juvenile offenders who had already been sentenced to life imprisonment in violation of the Eighth Amendment. The Judiciary Committee obviously was aware of this fact because it noted that Graham "left it to the states to 'explore the means and mechanisms for compliance' as long as they do not make 'the judgment at the outset that those offenders never will be fit to reenter society.' " Committee Report at 14 (quoting Graham , 560 U.S. at 79-82, 130 S.Ct. 2011 ) (emphasis added).

Also conspicuously absent from the Committee Report are the government's views regarding § 24-403.03, because the United States Attorney's Office submitted no testimony whatsoever regarding any provision in the IRAA or the Comprehensive Youth Justice Amendment Act. See Committee Report at 40-41 (listing representatives from the Office of the Attorney General and the Public Defender Service as the only government witnesses). Although the government now maintains that D.C. Code § 24-403.03 is the District's chosen constitutional cure for defendants serving life sentences rendered unconstitutional by Graham , Miller , and Montgomery , it never indicated to the Council that it understood the statute to serve this critical function.

Unlike D.C. Code § 24-403.03, Wyoming's statute does serve as a mechanism to categorically convert unconstitutional nonparolable sentences into constitutional parolable sentences, because it contains express, mandatory "conversion" language that D.C. Code § 24-403.03 does not: It provides that "[a] person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration ...." Wyo. Stat. Ann. § 6-10-301(c) (2013) (emphasis added).

See note 25 supra ; see also Ark. Code Ann. § 16-93-621 (West 2017) ; Cal. Penal Code § 3051 (West 2016) (amended 2018); Colo. Rev. Stat. Ann. §§ 18-1.3-401(4)(b), (c) (West 2018); Conn. Gen. Stat. Ann. § 54-125a(f) (West 2016); 2013 Del. Legis. Serv. Ch. 37, S.B. No. 9 § 6 (West); La. Code Crim. Proc. Ann. art. 878.1 (West 2017) ; Mich. Comp. Laws Ann. § 769.25(7) (West 2014); Nev. Rev. Stat. Ann. § 213.12135 (West 2015) ; N.C. Gen. Stat. Ann. §§ 15A-1340.19B, C (West 2012); W.VA. Code Ann. § 62-12-13b (West 2015). Some of these provisions additionally dictate individualized resentencing for defendants convicted of certain crimes, or provide individualized resentencing at the request of the prosecutor or defendant.

See, e.g. , Commonwealth v. Brown , 466 Mass. 676, 1 N.E.3d 259, 268 (2013) (requiring appellant challenging life without parole sentence under Miller to "be sentenced" under first-degree murder statute, but prohibiting application of parole ineligibility provision therein and explaining "what remains ... is a mandatory sentence of life in prison with the possibility of parole"); Jackson v. State , 883 N.W.2d 272, 274 (Minn. 2016) (reviving a statute that "require[s] a sentence of life imprisonment with the possibility of release after 30 years" for all juvenile offenders who had been sentenced to mandatory life without parole); Lewis v. State , 428 S.W.3d 860, 864 (Tex. Crim. App. 2014) (acknowledging appellate court's use of Tex. Penal Code § 12.31(a) (2013) (authorizing life imprisonment rather than life without parole to reform unconstitutional nonparolable sentences into constitutional parolable sentences) ).

See, e.g. , Betton v. State , --- So.3d ----, ---- - ----, 2018 WL 1980780, at *5-6 (Ala. Crim. App. April 27, 2018) (applying Ex parte Henderson , 144 So.3d 1262 (Ala. 2013), in resentencing Miller defendant); Harris v. State , 547 S.W.3d 64, 70-71 (Ark. 2018) ; In re Kirchner , 2 Cal.5th 1040, 216 Cal.Rptr.3d 876, 393 P.3d 364, 373-75 (2017) ; Horsley v. State , 160 So.3d 393, 406 (Fla. 2015) ; Veal , 784 S.E.2d at 412 ; Windom v. State , 162 Idaho 417, 398 P.3d 150, 158 (2017) ; People v. Holman , 418 Ill.Dec. 889, 91 N.E.3d 849, 864 (Ill. 2017) ; State v. Roby , 897 N.W.2d 127, 148 (Iowa 2017) ; Phon v. Commonwealth , 545 S.W.3d 284, 307-09 (Ky. 2018) ; Carter , 192 A.3d at 735-36 ; Jones v. State , 122 So.3d 698, 701-03 (Miss. 2013) ; State ex rel. Carr v. Wallace , 527 S.W.3d 55, 62 (Mo. 2017) ; State v. Mantich , 287 Neb. 320, 842 N.W.2d 716, 731 (2014) ; Petition of State , 166 N.H. 659, 103 A.3d 227, 230, 236 (2014) ; Zuber , 152 A.3d at 202 ; State v. Long , 138 Ohio St.3d 478, 8 N.E.3d 890, 899 (2014) ; Stevens v. State , 422 P.3d 741, 747-49, 751 (Okla. Crim. App. 2018) ; Batts , 163 A.3d at 435-60 ; Aiken v. Byars , 410 S.C. 534, 765 S.E.2d 572, 573, 574 (2014) ; Davis , 415 P.3d at 696 ; cf. State v. Valencia , 241 Ariz. 206, 386 P.3d 392, 395-96 (2016) (remanding Miller defendant for hearing on corrigibility, which if proven would require resentencing).

Cal. Penal Code § 3051 (West 2016) (amended 2018); Horsley , 160 So.3d at 405-09 (applying Fla. Stat. Ann. § 921.1401 (West 2014) retroactively).

Kirchner , 216 Cal.Rptr.3d 876, 393 P.3d at 374 & n.12 (explaining that, after resentencing, the state's sentence review statute, Cal. Penal Code § 1170, would "provide[ ] a mechanism that allow[ed] a second, third, and perhaps even a fourth look at a lawful sentence of life without parole ") (emphasis added); Horsley , 160 So.3d at 405-09 (applying Fla. Stat. Ann. § 921.1402 (West 2014) retroactively).

The Majority Opinion acknowledges that the Supreme Courts of Delaware and North Dakota have not upheld their respective sentence review statutes as an "adequate" remedy for substantive sentencing violations under the Eighth Amendment. See ante at 851 n.64. The Delaware Supreme Court is unlikely ever to do so because Delaware passed a different statute that retrospectively and prospectively requires Miller defendants convicted of first-degree murder to be sentenced to not less than 25 years without parole. Del. Code tit. 11 § 4209A ; 2013 Del. Legis. Serv. Ch. 37, S.B. No. 9 § 6 (West). After its enactment, Delaware adopted a "Case Management Plan" to resentence all Miller defendants serving mandatory life without parole sentences to constitutional sentences. State v. Evans , 2013 WL 7046372, at *2 (Del. Super. Ct. Nov. 25, 2013). And in considering the case of Barry Garcia, the sole defendant in North Dakota understood to have a potential Miller claim, the North Dakota Supreme Court recently acknowledged-without reference to the state's newly-minted sentence review statute-that if it found that Mr. Garcia's youth was not properly considered at his original sentencing, his sentence would "violat[e] ... the Eighth Amendment." Garcia v. State , 903 N.W.2d 503, 510 (N.D. 2017).

Accordingly, as the Majority Opinion acknowledges, the court remanded the case so that Mr. Horsley could be resentenced under the now-retroactive new law, which additionally provided him with subsequent judicial review of his sentence. 160 So.3d at 408 ; ante at 851 n.65. The Majority Opinion asserts that Mr. Horsley was resentenced because of "other defects in his original sentenc[e]." Ante at 851 n.65. The "defects" my colleagues in the Majority seem to reference are the factors that subjected Mr. Horsley to a life without parole sentence (i.e., the features that made him a Miller defendant), and the passage in Horsley to which they cite explains how Mr. Horsley might be resentenced under the individualized sentencing statute, either to another life term or to a term of years. My colleagues also assert that the court never found "the judicial review procedure inadequate" to remedy the juvenile offender's Eighth Amendment violation. Id. But, as explained above, the court never considered the judicial review procedure as anything more than an adjunct to the initial resentencing requirement. Lastly, my colleagues' reliance on a recent intermediate appellate decision, Nelms v. State , 263 So.3d 88 (Fla. Dist. Ct. App. 2019), as evidence that Florida is exclusively relying on its sentence review statute to cure unconstitutional sentences to die in prison is misplaced. As the court noted in Nelms , "after the [habeas] court found that [Mr.] Nelms' 1985 sentence violated Miller ... , the remedy was to resentence him pursuant to [the sentencing statute deemed retroactive in Horsley ], which the court did." Id. at 90 ; see also Id. (explaining "[i]t is settled that resentencing in accordance with [the sentencing statute retroactively applied in Horsley ] is the appropriate remedy for a sentence that violates Miller "). Mr. Nelms was resentenced to life imprisonment with the possibility of parole. Id. at 89-90 ; see also Id. at 90-91. In addition , consistent with Horsley , he was eligible to seek discretionary judicial review after serving 25 years of his sentence. Id. at 89-90.

The Majority Opinion, ante at 852 n.69, suggests Gutierrez is distinguishable because the California Supreme Court observed that any resentencing under the sentence review statute would incorporate a presumption (under a different California statute) in favor of a life without parole sentence. 171 Cal.Rptr.3d 421, 324 P.3d at 266. But the court independently rejected, on the grounds discussed in detail above, the government's argument that the mere existence of its sentence review statute obviated the need to resentence juvenile offenders unconstitutionally sentenced to die in prison.

Franklin 's reaffirmation of Gutierrez refutes the Majority Opinion's suggestion that the California Supreme Court, post-Montgomery , felt compelled to reassess its analysis of its sentence review statute in Gutierrez . See ante at 851-52.

The Majority Opinion asserts that Kirchner "articulated a different rationale for concluding that [its sentence review statute] was insufficient to remedy a Miller violation." Ante at 852. The Majority Opinion misreads Kirchner and in particular misses the question presented: whether the court would follow its direct appeal precedent (Gutierrez ) or establish a different remedy for juvenile offenders seeking post-conviction relief.

The Majority Opinion emphasizes the California Supreme Court's observation that the sentence review statute was flawed in yet another respect because it limited the class of juvenile offenders who could seek relief thereunder, 216 Cal.Rptr.3d 876, 393 P.3d at 372, and seeks to distinguish Kirchner on this basis. Ante at 851-53. But eligibility to seek relief was not one of the court's "fundamental[ ]" concerns. Id. 216 Cal.Rptr.3d 876, 393 P.3d at 373. By the time the California Supreme Court issued its decision, rewritten legislation was pending, see Kirchner , 216 Cal.Rptr.3d 876, 393 P.3d at 369 n.4 ; Cal. Penal Code § 3051 (West 2018), and in any event the petitioner in Kirchner was eligible to seek discretionary sentence review, 216 Cal.Rptr.3d 876, 393 P.3d at 365 (acknowledging that "petitioner conceivably could avail himself of" discretionary sentence review).

Within this context, the California Supreme Court noted that its sentence review statute directed that courts "may consider" certain enumerated but nonexclusive factors. 216 Cal.Rptr.3d 876, 393 P.3d at 370. The Majority Opinion attempts to distinguish Kirchner on this basis, alluding to the fact that the District's statute directs that trial courts "shall" do so. Ante at 852-53. But Kirchner 's critique of California's sentence review statute applies equally to D.C. Code § 24-403.03, because neither statute makes the assessment of a juvenile offender's corrigibility mandatory or dispositive in granting or refusing relief. Just like Cal Penal Code § 1170, sentence review in D.C. ultimately leaves to the judge's discretion whether to correct the sentence of a defendant entitled to a constitutional sentence, regardless of the court's findings related to corrigibility.

Graham v. Florida , 560 U.S. 48, 79-82, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

Id. at 75, 130 S.Ct. 2011.

See, e.g. , Rebecca Lowry, The Constitutionality of Lengthy Term-of Years Sentences for Juvenile Non-Homicide Offenders, 88 St. John's Law Rev. 3:9 (2015).

Fla. Stat. § 921.1402.

11 Del. C. § 4204A.

Sentencing Reform and Corrections Act of 2016, 114th Congress, (S.2123).